JOHN SHEVALIER *et al.*

*v.*

ELIZABETH SEAGER *et al.*

*Filed at Springfield September 27, 1887.*

1. NEW TRIAL—*on verdict of jury in contested will case—rule as in suit at law.* The verdict of a jury in a contested will case stands upon the same footing as a verdict in a common law case, when it is sought to impeach or set it aside on the ground it is not sustained by the evidence.

2. SAME—*on the evidence.* A verdict will not be set aside when there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize the verdict returned, notwithstanding it may appear to be against the strength and weight of the evidence; nor when the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the finding.

3. Where the evidence as to the mental capacity of a testator to make a will is hopelessly conflicting, many of the witnesses and acquaintances of the deceased testifying that he was not competent, and an equal or greater number testifying that he was competent, and the trial court sanctions a verdict finding the testator incompetent, by refusing a new trial, this court will not have the power to reverse on the ground that the verdict is not sustained by the evidence.

4. EVIDENCE—*weight and credit, how determined.* In the case of a conflict in the testimony of witnesses as to a fact in issue depending on their judgment, based on knowledge and circumstances, the weight of the evidence will not depend upon the number of the witnesses. The testimony of a single, honest, intelligent witness, respecting a matter of judgment, is entitled to more weight and credit than the testimony of many ignorant and unscrupulous witnesses.

APPEAL from the Circuit Court of McDonough county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

Mr. BYRON PONTIUS, and Mr. C. F. WHEAT, for the appellants:

As to the mental capacity to make a will, see *Rutherford* v. *Morris,* 77 Ill. 409; *Irish* v. *Newell,* 62 id. 196; *Yoe* v. *McCord,* 74 id. 33; *Meeker* v. *Meeker,* 75 id. 260; *Lilly* v. *Waggoner,* 27 id. 395.

As to what is undue influence which will avoid a will, see *Rutherford* v. *Morris*, 77 Ill. 409; *Carmichael* v. *Reed*, 45 id. 108; *Brownfield* v. *Brownfield*, 43 id. 147; *Roe* v. *Taylor*, 45 id. 485; *Kinney* v. *Johnson*, 50 Barb. 70; *Tyler* v. *Gardner*, 35 N. Y. 610; *Tyson* v. *Tyson*, 37 Md. 567; *Eddie* v. *Sampson*, 26 N. Y. 11; *Miller* v. *Miller*, 3 S. & R. 269; *Mountain* v. *Bennett*, 1 Cox, 355; *Rabb* v. *Graham*, 43 Md. 9; *Sturtevant* v. *Sturtevant*, 116 Ill. 354; *Dickie* v. *Carter*, 42 id. 379; *Allmon* v. *Pigg*, 82 id. 149.

The court erred in giving and modifying instructions and in refusing a new trial.

Messrs. PRENTISS & BAILEY, Messrs. TUNNICLIFF & TUNNI-CLIFF, and Messrs. VOSE & SHERMAN, for the appellees:

That the verdict of a jury upon an issue of this kind is not merely advisory to the court, as ordinary issues out of chancery are, but is to have the same force and effect as verdicts in trials at law in determining whether a re-trial should be had or not, is no longer an open question in this court. *Bible Society* v. *Price*, 115 Ill. 623; *Meeker* v. *Meeker*, 75 id. 260; *Long* v. *Long*, 107 id. 210; *Calvert* v. *Carpenter*, 96 id. 63; *Carpenter* v. *Calvert*, 83 id. 62; *Brownfield* v. *Brownfield*, 43 id. 147.

As to the rule in granting new trials where the evidence is conflicting, see *Johnson* v. *Moulton*, 1 Scam. 532; *Roney* v. *Monaghan*, 3 Gilm. 85; *O'Reilly* v. *Fitzgerald*, 40 Ill. 310; *Railroad Co.* v. *Vosburgh*, 45 id. 311; *DeClerq* v. *Mungin*, 46 id. 112; *Young* v. *Rock*, 48 id. 42; *National Bank* v. *Mansfield*, 48 id. 494; *Railroad Co.* v. *Terhune*, 50 id. 151; *Calvert* v. *Carpenter*, 96 id. 63.

As to the capacity requisite to make a valid will, see *Meeker* v. *Meeker*, 75 Ill. 260, and *Carpenter* v. *Calvert*, 83 id. 66.

The jury may infer testator's incapacity from facts proved, anterior and subsequent to the testamentary act. *Irish* v. *Smith*, 8 S. & R. 573; *Davis* v. *Calvert*, 5 Gill & Johns. 269.

Undue influence will be inferred from the nature of the transaction alone. Fraud and undue influence are not ordinarily susceptible of direct proof. *Harvey* v. *Sullens*, 46 Mo. 147; 2 Am. Rep. 491; *Tyler* v. *Gardner*, 35 N. Y. 594; *Sears* v. *Schafer*, 2 Selden, 272; *Delafield* v. *Parish*, 25 N. Y. 95; · *Eelbeck* v. *Granberry*, 2 Am. Dec. 648.

When confidence is reposed in one who afterward becomes a beneficiary under a will, it raises the presumption of undue influence, especially where the beneficiary writes, or procures to be written, the alleged will in question, when the testator is worn down by disease and ready to sink into the grave, and is himself present at every stage of the proceedings. In such cases the proof should be of a clear and satisfactory character that the transaction is free from impropriety. *Delafield* v. *Parish*, 25 N. Y. 9; Cases cited in note 10, 1 Jarman, 69, 70, 137; *In re Van Horn*, 7 Paige, 46; *Tyler* v. *Gardiner*, 35 N. Y. 592; *Lake* v. *Ranney*, 33 Barb. 49; *Bergen* v. *Udall*, 31 id. 9; *Crispell* v. *Dubois*, 4 id. 397; *Duffield* v. *Robeson*, 3 Harr. 384.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 23d of January, 1886, Charles Shevalier, at his residence in McDonough county, executed an instrument, in due form, as and for his last will and testament, whereby he disposed of his entire estate, real and personal. At the time of its execution he was greatly prostrated, and suffering intensely from cancer of the stomach, of which he died on the 12th of the following month. Seven days later the instrument in question was duly probated, in the county court of McDonough county, as his will. Certain of his heirs, the appellees herein, being dissatisfied with the dispositions of the will, filed, in the circuit court of McDonough county, the present bill, for the purpose of contesting its validity. The bill charges, in substance, that the testator, at the time of making the instrument in question, was of unsound mind and memory, and

that its execution was procured through the improper and undue influence of his brother John, one of the appellants herein, and residuary legatee under the will. The court, as required by the statute, caused an issue at law to be made up, submitting to a jury, for its determination, whether the said instrument was the will of the deceased or not. . A vast amount of testimony was heard by the court and jury on both sides of this issue, most of which was addressed exclusively to the inquiry, whether the deceased was of sound mind and memory at the time of making the alleged will. The jury, upon consideration of all the evidence before them, found that the instrument in question was not the will of the deceased, and the court, after considering and overruling a motion for a new trial, entered a final decree in conformity with the verdict of the jury. From that decree the proponents of the will have prosecuted an appeal to this court.

As to the charge of undue influence, the utmost that can be truthfully claimed is, that there is a bare *scintilla* of evidence tending to establish it. This charge in the bill has clearly not been proved.

With respect to the testamentary capacity of the deceased, the case is altogether different. Here we find quite an array of witnesses on each side of the question, and a hopeless conflict in their testimony. Many of these witnesses included physicians of high respectability, against whose character for truth nothing is, or probably can be, justly alleged, who were intimately acquainted with the deceased, and who, so far as we are able to judge, had equal opportunities of correctly determining the mental condition of the deceased at the time of making the alleged will. Nevertheless, we find them divided into two classes, who have come to directly opposite conclusions from one another on the subject. In this state of the testimony, it was the peculiar province of the jury to determine which set of these witnesses was right and which was wrong. This the jury did, and the conclusion reached by them has

received the sanction and approval of the judge who presided over the trial, and in whose presence and hearing these witnesses gave their testimony. Notwithstanding this, we are asked to set aside the verdict of the jury, sanctioned, as it is, by the judge who heard the cause, and reverse the decree of the lower court, mainly on the ground that the verdict of the jury is not sustained by the weight of the evidence. That we have no right to do. This is abundantly settled by the authorities. In the first place, it has long been the settled doctrine of this court that the verdict of a jury in a contested will case like the present, stands upon the same footing as a verdict in a common law case, where it is sought to impeach or set it aside on the ground that .it is not sustained by the evidence. *Brownfield* v. *Brownfield,* 43 Ill. 147; *Meeker* v. *Meeker,* 75 id. 260; *Calvert* v. *Carpenter,* 96 id. 63; *Long* v. *Long,* 107 id. 210; *American Bible Society* v. *Price,* 115 id. 623.

The question then recurs, What is the rule in common law cases in respect to granting new trials on the ground that the verdict is contrary to the evidence? The question stated has been frequently answered by this court, under various circumstances, and in language, though often differing in form of expression, yet always practically amounting to the same thing. This is fully shown by the following cases, cited in appellees' brief: *Johnson* v. *Moulton,* 1 Scam. 532; *Roney* v. *Monaghan,* 3 Gilm. 85; *O'Reily* v. *Fitzgerald,* 40 Ill. 310; *Chicago and Great Eastern Railway Co.* v. *Vosburgh,* 45 id. 311; *DeClerq* v. *Mungin,* 46 id. 112; *Young* v. *Rock,* 48 id. 42; *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Terhune,* 50 id. 151; *Illinois Central Railroad Co.* v. *Gillis,* 68 id. 317. The case last mentioned contains, perhaps, as clear and apt a statement of the rule, if not more so, than any of them. It is there said: "If any rule of court can be so well established as to be neither questioned nor require the citation of authorities to support it, it is that a verdict will not be set aside whenever there is a contrariety of evidence, and the

facts and circumstances, by a fair and reasonable intendment, will authorize a verdict, notwithstanding it may appear to be against the strength and weight of the testimony." In the later case of *Calvert* v. *Carpenter*, 96 Ill. 63, which, like the present, was a contested will case, the rule is formulated in fewer words, though in substance it amounts to the same thing. In that case, as in this, there was a direct conflict in the testimony as to the testator's capacity to make a will, and it was there said: "This court will not reverse the judgment of the trial court where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the verdict."

The truth is, the rule could not be otherwise, without invading the province of the jury to determine the credibility of witnesses, and to say which of them are to be believed in case of a conflict. To do this would be to dispense with the essential functions of a jury, and thus destroy its utility altogether. This case illustrates the principle as well as any that could be suggested. All the medical witnesses agree that the testator, at the time of making the will, was gradually starving, as well as sinking, under the terrible disease that was preying upon his vitals. The patient fully realized the fact that death was rapidly approaching, and the concurrent testimony of all is, that he was so greatly excited and deeply affected by it that it was constantly present in his mind, and was the chief topic of his conversation. Evidently his attachment to life was unusually great, and he gave no evidence of that calm resignation we should expect to find, under the circumstances, in one of his advanced age. Just what effect or bearing these undisputed facts, and many others that might be mentioned, had upon the testator's mental condition at the time of making the alleged will, was a question for the jury.

In the light of these facts, taken in connection with the personal knowledge of the deceased, before and after the time in question, seven or eight of the witnesses examined on the

trial gave it as their opinion, under the sanction of an oath, that he did not have the requisite capacity to make a will. It is true that a greater number of the witnesses arrive at just the opposite conclusion. Here was a conflict. Who was to determine it? Manifestly the jury. How were they to do it? Certainly not according to the number of witnesses, without regard to their intelligence, means of information, integrity, etc. The testimony of a single, honest, intelligent witness, respecting a matter of judgment, is entitled to more weight and credit than the testimony of many ignorant or unscrupulous witnesses, and, as before observed, it is the peculiar province of the jury to say, within certain reasonable limits, just how much credit shall be given to each witness. Such being the case, it is not perceived upon what principle we could reverse the judgment, on the ground that the verdict is not sustained by the evidence, without invading the province of the jury to determine the credibility of the witnesses.

With respect to the instructions of the court, we find no substantial objections to them. Taking them as a whole, we think the law, as applicable to the evidence, was properly laid down to the jury. The great and controlling question in the case was one of fact, namely, whether the deceased was of sound mind and memory at the time of making the instrument in question. As we have seen, the jury have answered this question in the negative, and under the law, as we understand it, this decision of theirs must be accepted as conclusive upon the parties.

The decree will be affirmed.

*Decree affirmed.*