P. A. Gundlach et al., Partners Under the Name of Gundlach & Rompel, v. Edward Schott, a Minor, by his Next Friend.

1. SPECIAL INTERROGATORIES — *When Pertaining to Evidentiary Facts.*—Special interrogatories which pertain to evidentiary facts only, and not to ultimate facts, are properly refused.

2. VARIANCE—*Allegations and Proofs.*—Where a declaration averred that the left hand, arm and clothing of the plaintiff came in contact with the twist of a belt, and he was thereby gathered and wrapped around a pulley and injured, while the proof showed that his arm, hand and clothing did not come in contact with the twist of the belt and that that did not cause his injury, it was held not to be a material variance.

3. VERDICTS—*When Not to be Set Aside.*—A verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, authorize it, notwithstanding such verdict may appear to be against the weight and strength of the testimony. The rule could not be otherwise without invading the province of the jury to determine the credibility of the witnesses and to say which of them are to be believed in cases of conflict.

4. ATTORNEYS—*When a Case Will Be Reversed for Improper Conduct.*—A case may be reversed for misconduct, during the trial, of the attorney for the successful party, especially where the court refuses to properly interpose its authority when objection is made.

5. DAMAGES—*Where $7,000 is Not Excessive.*—Where a young man, just beginning his career in life, able to earn at his regular business $1.50 per day and to add to that $2 to $3 a week as a musician, with a prospect of being able to increase his earnings as he became more experienced, was caught by a running belt in a foundry and his arm torn off, necessitating amputation near the shoulder, and rendering him for the remainder of his life wholly incapable of pursuing his vocation in the foundry or any like vocation, he suffering great pain and must

c ntinue to do so as long as he lives, and constantly to suffer great incon-
venience and embarrassment on account of the loss of his arm, a verdict
for $7,000 is not excessive.

Trespass on the Case, for personal injuries. Appeal from the Circuit
Court of St. Clair County; the Hon. Martin W. Schaefer, Judge,
presiding. Heard in this court at the August term, 1900. Affirmed.
Opinion filed March 11, 1901.

Wise & McNulty, attorneys for appellant; Winkleman
& Baer, of counsel.

Webb & Webb and G. A. Koerner, attorneys for appellee.

Mr. Presiding Justice Creighton delivered the opinion
of the court.

This was an action in case, in the Circuit Court of St.
Clair County, by appellee against appellants, to recover dam-
ages for personal injury sustained by appellee while engaged
in the discharge of his duties as a servant of appellants, in
their foundry. Trial was by jury. Verdict and judgment
in favor of appellee for $7,000.

The declaration contained four counts, and made appel-
lants, with certain other parties, defendants. During the
trial appellee dismissed as to all defendants except appel-
lants, and at the close of appellee's evidence, the court
directed the jury to find for appellants as to the first, second
and fourth counts. So the case went to the jury on the
third count of appellee's declaration and appellants' plea of
not guilty.

The third count is as follows:

" And for that whereas, the defendants, on, to wit, the 8th
day of September, A. D. 1899, at the County of St. Clair
and State of Illinois, were possessed of and using a certain
foundry plant, and were then and there engaged by their
servants in moulding certain castings and parts of machinery,
and in connection therewith operated a certain appliance or
machine designated a rattle-box, supported by a wooden
frame structure about two feet high from the ground, and
which was used by the defendants for the purpose of clean-
ing and smoothing the surface of said castings and mould-
ings. And plaintiff avers that the said rattle box was

operated by means of a leather belt and two pulleys, one of which was attached to the end of an iron shaft connected with and extending through the said rattle-box, and the other pulley being attached to an iron shaft supported by means of a wooden framework set against a certain wall and being about twelve feet high from the ground, the said pulleys being connected by the said leather belt. And the plaintiff avers that he was then and there in the employ of defendants and under their direction and control, and his duties required of him that he clean and remove the sand and other rough substances from the surface of said castings and mouldings by throwing them into said rattle-box and taking them therefrom when cleaned and finished, and also to put on and throw off the belt then and there used to operate said rattle-box, and as hereinafter more definitely stated. And plaintiff avers that said rattle-box and the appliance and machinery with which it was then and there operated, was so constructed and arranged that when it became necessary to load and unload the said rattle-box, the said belt so attached thereto had to be disconnected from the pulley on said rattle-box, so that the box might stop and remain still. And plaintiff avers that when said belt was thus disconnected from the rattle-box pulley as aforesaid, the said top pulley would remain in motion, the belt resting on the shaft supporting said top pulley, and that in order to set in motion said rattle-box, it was necessary that said belt be put on and around said top pulley by the use of plaintiff's hands while said top pulley was in motion. And plaintiff avers that it was a part of his duty, and he was so ordered and directed by defendants, to put said belt on and around said top pulley while the same was in motion, and in order to reach the same it was necessary to climb up the side of the said wall and stand upon the window sill and place the said belt on and around said top pulley. And plaintiff avers that the said belt was imperfectly and improperly sewed together, leaving a twist in the same, thereby rendering it very difficult and dangerous to adjust it on said top pulley, of all of which the defendant had full and complete notice; that defendants then and there, after having notice of the dangerous and imperfect condition of said belt, ordered, directed and instructed plaintiff to use it in said condition, informing plaintiff that the same was safe, sufficient, and not dangerous.

And plaintiff avers that while he was thus engaged in putting said belt on and around said top pulley, in the exercise of all due care and caution for his own safety, and

without knowledge of any danger connected therewith, under and by the instructions and direction of defendants, as aforesaid, his left hand and arm, and the clothing thereon, came in contact with the twist on said belt, thereby violently gathering plaintiff up and wrapping and twisting him around said pulley and shaft in such forcible and violent manner as to wrench, twist and tear off his left arm below the elbow and necessitating the amputation of his arm above the elbow near the shoulder, producing much pain and rendering him sick, sore and disabled for life; wherefore and by means of which said negligence of the defendants in furnishing the imperfect and dangerous belt with which plaintiff was to work, and their negligence in ordering and directing plaintiff, as aforesaid, he was injured as aforesaid, and was compelled to and did expend and become responsible for a large sum of money, to wit, $500, in endeavoring to become healed of his said injuries, to the damage of plaintiff in the sum of $10,000."

Appellants' counsel, in stating the case say:

" The plaintiff's declaration * * * gives a fairly accurate description of the business conducted by defendants, the employment of the plaintiff, and the manner in which he had to execute his work."

It is not accurate in all its particulars, but it fairly describes the situation of the pulley, rattle-box, and the manner of adjusting the belt, which was, as is averred, done by hand while standing on the window sill, or else by bracing one foot on a covering of the rattle-box and the other on the window sill—usually by standing on the window sill. This, then, may be accepted as a statement of the case so far; and in addition we may add that appellee was a young man twenty years old, had been in appellants' service for about two months and a half, all the time in the same line of employment as at the time of the injury; that he had adjusted the belt on the pulley in question about three times a day during all that time, and that he also adjusted another belt on another pulley in the operation of another rattle-box during same service, about the same number of times a day; that he had previously worked at another foundry and had adjusted belts there, by hand, a few times; that on the day before the injury the belt broke and Jacob

A. Rompel, the superintendent of the foundry and one of the appellants, sewed it, saying to appellee that he would sew it and for appellee to go ahead with the other work, and the evidence tends to show that in sewing the belt, Rompel so spliced it as to leave it twisted; that before it was adjusted on the pulleys appellee discovered the twist and called Rompel's attention to it, and that Rompel replied that "it was all right," and for appellee to "go ahead," and appellee did so, adjusting it three times during the remainder of that day and twice before the injury occurred on the next day; that on the occasion of the injury appellee had climbed to his place on the window sill and while trying to adjust the belt around the rapidly revolving pulley, because of the twist in the belt his left hand was caught and his arm torn off. His account of it as abstracted from his testimony by appellants' counsel is as follows:

"When Mr. Rompel sewed the belt together, he told me it was all right, to go ahead and put it on. I called his attention to the twist. His answer was, it was all right, to go ahead. I did not know there was any danger putting it on that way. I was standing with both feet on the window sill. The window sill is somewhat over three feet from the ground. I had to put on the belt. I raised the belt up with my right hand, and braced myself with my left hand against the shaft which was revolving. When I threw the belt up there I had to push it with my left hand, because the belt was heavy. I put the belt on with my right hand, and took my left hand and helped to put it on, and the twist came up and threw the twist right over very quickly and caught my fingers, and I could not get them away any more. I tried my best to get them away. It threw me up to the roof two times, and when I hit the roof I slipped back, and I thought I would get killed, and it threw me up against the roof, and I threw myself back so I would not go around the pulley; then I came up again and threw myself back, and then I fell to the ground, and my arm was torn off. The bones were broken off, and the flesh stripped right off the bones, and there was no flesh on the bones below the elbow." * * * "I was caught between the belt and the pulley."

At the conclusion of appellee's evidence in chief, appel-

lants' counsel moved the court to direct the jury to find the defendants not guilty, and the court denied the motion as to the third count of the declaration. In this the court did not err. There was at that stage of the case substantial evidence before the jury, tending to prove every material averment of this third count of the declaration. On such state of record a trial court should not direct a verdict for defendant. Again, at the close of all the evidence, appellants' counsel moved the court to direct the jury to find for defendants; again the court denied the motion, and in this the court did not err. Appellee had made a *prima facie* case and appellants' testimony is not so conclusive as to take appellee's case out of the domain of dispute, nor does it establish, beyond question, any fact that bars appellee's right of recovery. On such state of record the trial court should not direct a verdict.

Appellants' counsel complain of the action of the court in refusing to submit to the jury the following interrogatories :

" 1. Was the plaintiff instructed not to put the belt on the upper pulley, while the upper pulley was running rapidly ? "

" 2. Was the plaintiff injured because he, in violation of his instructions, attempted to put the belt on the upper pulley while said pulley was running rapidly ? " .

This record does not disclose, either in the pleadings or evidence, the issue of fact presented in the first of these refused interrogatories. Appellee admitted, and himself in substance testified, that he was instructed not to put the belt on " right after it was sewed " while the pulley was running rapidly, and that on such occasions he always slowed down before putting on the belt, but that this instruction applied only to the first time the belt should be put on after being mended, and had no application to the general operation of the appliance, and that this instruction was so understood by him and so acted on by him all the time he was there, and in the immediate daily presence and under the eye of appellant Rompel. Appellants' contention is, and their testimony on that question was to the effect

that the instruction not to put the belt on while the pulley was running rapidly, did apply to the general operation of the appliance; that it applied in all cases, all the time. The issue raised by the evidence was not whether appellee was instructed not to put the belt on while the pulley was running rapidly, but was, whether such instruction applied to the general operation of the appliance or only to the first time the belt should be put on after being sewed. The second refused interrogatory is directly involved with the first and is subject to the same objection, and then a paramount reason why both these interrogatories should have been refused by the trial court, is, that they both pertain to evidentiary facts only, and not to ultimate facts.

Appellants' counsel contend that there is a variance, and in this connection insist that the court erred in refusing the third instruction asked by them. The instruction is as follows:

" 3. The jury will disregard the third count of the declaration and find a verdict for defendants, because there is a variance between the declaration and proof in this: the declaration avers the left hand and arm and clothing of plaintiff came in contact with the twist on the belt, and he was thereby gathered and wrapped around said pulley, and he was injured thereby, while the proof shows his arm, hand or clothing did not come in contact with said twist of the belt, and this did not cause his injury."

The only variance contended for is the one suggested in this refused instruction. The testimony of appellee above quoted, clearly tends to support the averment of the declaration mentioned in this instruction, and we think certain of the facts and circumstances disclosed by the evidence are proper to be considered in connection with that averment. The trial court did not err in refusing this instruction, nor in refusing appellants' 22d and 23d instructions. The substance of the 22d is more than once embraced in the instructions that were given, and the 23d assumes as true a fact which, under the evidence, it was the duty of the jury to determine.

Appellants' counsel insist that portions of the testimony

Gundlach v. Schott.

of certain witnesses were improperly admitted, and contend that such evidence invaded the province of the jury. These witnesses were experts and were permitted to give opinions. This we all agree an expert may do, in a proper case, but appellants' counsel insist that this testimony falls under the rule that even an expert should not be allowed to give an opinion, where all the facts on which the opinion is based can be made intelligible to the court and jury. We think the facts were not such as to bring it under this rule; but however this may be, as we understand the record in this case we are not called upon to discuss this evidence in detail. This was part of appellee's evidence in chief, and when it was admitted the declaration consisted of four counts. It was relevant to the issues raised on the first and second counts but did not bear upon the contested issues submitted on the third count. At the close of appellee's evidence in chief, counsel for appellants presented the following motion :

"Now come the defendants, at the close of plaintiff's evidence, and move the court to exclude said evidence and to instruct the jury to find the defendants not guilty. * * * And defendants ask that this instruction be given as to each and every count of plaintiff's declaration."

" The court sustained the motion and gave the instruction as to the first, second and fourth counts of the declaration, and denied said motion and refused to give said instruction as to the third count."

This action of the court excluded all the evidence from the consideration of the jury, except such as was relevant to the third count. If counsel were not satisfied with such general exclusion, and had desired the court to particularize the parts of the evidence excluded with the first, second and fourth counts, they should have presented a motion to that effect, pointing out therein the particular parts they desired to have so excluded.

Appellants' counsel discuss a number of questions of fact in their brief, but these were all submitted to the jury, appellants directly joining in such submission, as is evidenced by the contents of the numerous instructions which

the trial court gave at their request.    In I. C. R. R. Co. v. Gillis, 68 Ill. 318, it is said :

"If any rule of this court can be so well established as to be neither questioned nor require the citation of authorities to support it, it is that a verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize the verdict, notwithstanding it may appear to be against the weight and strength of the testimony."

In Calvert v. Carpenter, 96 Ill. 63, the court says :

"The rule is firmly established that where, as in this case, there is an irreconcilable conflict in the testimony, this court will not reverse the judgment of the trial court, where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain a verdict."

And in Shevalier v. Seager, 121 Ill. 564, the court having quoted with approval the foregoing, says :

"The truth is, the rule could not be otherwise without invading the province of the jury to determine the credibility of witnesses, and to say which of them are to be believed in case of conflict. To do this would be to dispense with the essential functions of a jury, and thus destroy its utility altogether."

During the selection of the jury Mr. Webb, one of the attorneys for appellee, in examining the first four men called as jurors, asked : " Q. Do you know a man by the name of Holland ? I do not know his first name; he is an insurance agent." Mr. McNulta, counsel for defendants, objected to this question. Whereupon Mr. Webb said to Mr. McNulta, " You know whom I mean; what is his name, then ? " Mr. McNulta replied that he did not know any · such man. Mr. Webb said, " I have reason to believe you do, because he was around here trying to compromise this case." Counsel for appellants objected to the remarks of Mr. Webb, whereupon the court directed the jury to disregard all the questions that Mr. Webb had propounded to the jurors concerning the supposed man Holland, that he represented as being an agent of some insurance company, and that the jury should disregard the remarks made between counsel concerning the matter; that the jury should

Gundlach v. Schott.

disregard that in the trial of the case.  ·Counsel for appellants contend that, notwithstanding the ruling and direction of the court, this was such misconduct on the part of appellee's counsel as calls for a reversal of this case.   The law is well established in this State, that a case may be reversed for misconduct, during the trial, of the attorney of the successful party, especially where the court refuses to properly interpose its authority when objection is made.   The remark, made in the presence and hearing of the jurors, to the effect that this agent "was around trying to settle this case," was a highly improper remark, and we think could not have been innocently made.   Such conduct justly deserves condemnation, and if the trial court had not interposed to condemn it and arrest its probable influence upon the jury, it might have been sufficient to warrant a reversal of the case.

It is insisted that the verdict is excessive.   Appellee was a young man, just beginning his career in life, able to earn at his regular business $1.50 per day and to add to that $2 to $3 a week as a musician, with a prospect of being able to increase his earnings as he might become more mature and experienced.   His injury renders him for the remainder of his life, wholly incapable of pursuing either his vocation in a foundry or any like vocation, or that of a musician.   Then he suffered great pain, and will continue, as long as he lives, constantly to suffer great inconvenience and embarrassment on account of the loss of his arm.   The amount of damages that shall be recovered in such cases is so largely a question of fact for the jury to determine, that it is only in very extreme cases that a court can say, as matter of law, that the damages assessed are excessive.   We find no material error in this record.

The judgment of the Circuit Court is affirmed.