## Grayville Water Works v. Mary Burdick.

1. INSTRUCTIONS—*Where They Are Not Repugnant They Must All Be Considered Together.*—Where instructions given are not repugnant they must all be considered together in determining whether correct rules of law were given to the jury.

2. EVIDENCE—*Where Letters May Be Admitted Without Proof of Handwriting.*—Letters received in reply to others proved to have been sent to a party are admissible in evidence without proof of the writer's handwriting.

3. APPELLATE COURT PRACTICE—*Where Judgment Will Not Be Reversed for Want of Evidence Alone.*—The Appellate Court will not reverse a judgment of the trial court for want of evidence alone, where the evidence of the successful party when considered by itself is clearly sufficient to sustain the verdict.

**Trespass on the Case.**—Damages from overflow of water.  Appeal from the Circuit Court of White County; the Hon. PRINCE A. PEARCE, Judge presiding.  Heard in this court at the February term, 1903. Affirmed.  Opinion filed September 10, 1903.

PARKER & PEARCE, attorneys for appellant.

J. C. PEARCE, attorney for appellee.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of White

County, by appellee against appellant, to recover damages resulting from the overflow of water onto the premises of appellee. Trial by jury. Verdict and judgment in favor of appellee for $200.

The declaration charges that appellee was the owner of a valuable residence and out-buildings in the city of Grayville; that appellant erected its stand-pipe to the height of 110 feet, near to appellee's premises; that at divers times appellant pumped water into this stand-pipe to such an extent as to cause it to overflow and deluge appellee's premises, making it continuously wet and muddy, filling the cellar, washing the soil from the lot and causing ditches and gullies, and during the winter season causing the formation of ice on the grounds, walks, driveways, porches and cellar door. Claims $1,000 damages. To this declaration appellant pleaded not guilty.

Upon the trial appellee testified in substance as follows:

"My name is Mary Burdick; I reside in Grayville, Illinois, and am the plaintiff in this suit. The stand-pipe of the Grayville Water Works was erected about eight years ago. My dwelling-house faces south. The stand-pipe is northeast from the back part of my house. My house was built about eleven years ago. It is a ten-room frame house with a good brick foundation and cellar under it. On account of the water coming in on the porch on the north side of the house we had to lattice the south entrance to the porch. The water not only came onto the porch but it came in under the door into the dining-room. On account of the overflow from the stand-pipe we had two sets of steps to the north porch. The cellar steps and cellar door were decayed, and there was water in the cellar. The driveway on the north side of the house running east and west from the street to the barn was washed out about three feet deep. The water from the stand-pipe comes on my premises every time the wind blows from the north or northwest. It flows in under the porch and very often under the door. There is a small pipe at the top of the stand-pipe and when it is full up to that pipe the water comes out there. If the wind is blowing any way except from the south it blows the water over my house. The driveway has been fixed, I can't say how many times; I was going to say fifty, but I will say twenty times, anyway. The outside there is rendered impassable;

can't bring in feed or anything. My husband has had to go to the livery stable, because he could not take his horse and buggy out of the yard. There were holes as deep as that table in the driveway. This was caused by the water flowing on the driveway and washing it down. Last winter I think the overflow averaged about twice a week. On Thanksgiving day, last November a year ago, the driveway and the brick sidewalk leading to the side entrance of the porch were a sheet of ice caused by the water flowing over it and freezing there. That was continuously throughout the winter. The overflow continued. In the winter it is ice and in the summer it is mud and water. You can't go out of our side entrance if the wind is blowing from the north or northwest when the water is flowing out of that pipe. It comes down there like a hard rain or shower. This has been kept up since the tower was erected. They had a gauge for awhile and it was not so bad then. I think I am damaged to the full extent of what I have sued for. The damage is continuing and causes a depreciation in the value of my property. I can't fully state what my damage is. Besides the annoyance, my yard is damaged and my house has been damaged through every room down stairs. My cellar is damaged. I could not keep my pantry window open if the wind was from the north. It beats against the house like heavy rain. I suppose that bank has been fixed twenty-five times. The water did not flow on my premises and injure them before the stand-pipe was erected."

Appellee's testimony as above abstracted is corroborated in the main by a number of witnesses. The witnesses on behalf of appellant who had an opportunity to know, all admit that the stand-pipe did sometimes overflow or allow water to escape from a pipe near the top, but they deny that water escaped to anything like the extent that appellee and her witnesses state it, and state that in their opinion the damage to appellee's property was very slight— some of them say nothing. One says:

"I don't think she was damaged at all in dollars and cents. * * * It was a good deal of annoyance though."

That appellant did at times wrongfully cause water to fall and flow upon appellee's premises is clearly established, and not disputed. The only questions in dispute are as to the

frequency and extent that this occurred, and the amount of damages that resulted to appellee therefrom.

The grounds upon which appellant's counsel claim a reversal are, that the court gave improper instructions; that it admitted improper evidence, and that the damage, as fixed by the verdict and judgment, is excessive.

Five instructions were given on behalf of appellee and ten on behalf of appellant. These instructions were in no sense repugnant, and in such case they must all be considered together. When this is done, we find that the law was given to the jury fully, and as favorably to appellant as the facts would warrant.

Appellant's complaint as to the admission of improper evidence is based upon a ruling of the trial court admitting a certain letter. Counsel claim that this letter was not properly identified; that there was no "proof of its authenticity." The letter in question is signed "Grayville Water Works," and was received through the mail in reply to one that was written to appellant concerning the subject-matter of this suit.

In Sec. 573a, 1st Greenleaf on Evidence, the author says:

" A further exception to the rule requiring proof of handwriting has been admitted, in the case of letters received in reply to others proved to have been sent to the party. Thus, where the plaintiff's attorney wrote a letter addressed to the defendant at his residence, and sent it by the post, to which he received a reply purporting to be from the defendant, it was held that the letter thus received was admissible in evidence, without proof of the defendant's handwriting "—without other proof of its authenticity.

The amount of damages sustained by appellee was a question to be determined by the jury from the evidence, and the evidence abundantly supports the verdict. While the record discloses a conflict and contrariety of evidence as to the extent of the injury and amount of damages resulting therefrom, it can not be said there is any lack of evidence.

" The Appellate Court will not reverse a judgment of the trial court, for want of evidence alone, where the evidence of the successful party, when considered by itself, is clearly

sufficient to sustain the verdict." Ward v. Garrison, 95 Ill. App. 214; Shevalier v. Seager, 121 Ill. 564.

We find no substantial error in this record. The judgment of the Circuit Court is affirmed.