## JOSEPHINE CALVERT

v.

## RACHAEL A. CARPENTER et al.

*Filed at Ottawa February 4, 1880—Rehearing denied September 17, 1880.*

1. CHANCERY PRACTICE—*effect of verdict on feigned issue.* Ordinarily, in chancery cases, where a feigned issue is directed by the chancellor to be made up and submitted to a jury with respect to some controverted fact arising in the case, the verdict of the jury upon such issue is not conclusive upon the question submitted, but merely advisory in its character, and the chancellor may, when satisfied that truth and justice require it, render a decree contrary to the verdict.

2. SAME—*effect of verdict on contest of will.* The verdict of a jury in a case contesting a will in chancery, under the statute, is to have the same force and effect as is given to a verdict in a case at law under a like state of facts; and when not manifestly against the weight of evidence, the court is bound by it in the same manner and to the same extent as if it were a case at law.

3. NEW TRIAL—*on the evidence.* Where there is an irreconcilable conflict in the testimony this court will not reverse the judgment of the trial court where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the verdict, and especially where the evidence is voluminous and there have been two trials resulting the same way. The court below and the jury have superior means to this court of judging of the credibility of the witnesses and what weight to give their testimony.

APPEAL from the Appellate Court for the Second District; the Hon. NATHANIEL J. PILLSBURY, presiding Justice, and the Hon. GEO. W. PLEASANTS and Hon. LYMAN LACY, Justices;—heard in that court on appeal from the Circuit Court of Henry county; the Hon. A. A. SMITH, Judge, presiding.

This was a bill in chancery, filed by appellant, Josephine Calvert, in the Henry county circuit court, against appellees, to contest the validity of the will of the mother of appellant, Lydia W. Naudain, who died at Philadelphia on the 6th of July, 1873, on the alleged grounds of a want of testamentary capacity, and undue influence on the part of Rachael Ann Carpenter, the principal legatee under the will. There was a trial of the cause before the Hon. GEORGE W. PLEASANTS

and a jury, at the October term, 1875, of the circuit court, resulting in a verdict and decree against the validity of the will. At the September term, 1876, of the Supreme Court, this decree, on appeal by these appellees, was reversed on the ground that it was not sustained by the evidence; and the cause was remanded to the circuit court for further proceedings. See *Carpenter et al.* v. *Calvert,* 83 Ill. 62.

At the October term, 1878, of the court below, there was another trial of the cause before the Hon. A. A. SMITH, judge, and a jury, which also resulted in a verdict and decree against the validity of the alleged will. On appeal to the Appellate Court for the Second District this decree was reversed and a final judgment entered in that court dismissing complainant's bill. From this latter judgment appellant has prosecuted an appeal to this court.

The instrument in question was executed by Mrs. Naudain at her residence in Geneseo, Henry county, in this State, on the 6th day of January, 1873, just six months before her death. Her estate was worth some $6000 or $8000. By the provisions of the will she gave the homestead property and household furniture to Miss Rachael Ann Carpenter, the principal legatee, and also made the following special bequests, viz: To Jemima W. Carpenter, Lizzie C. Hall and Rachael Ann Carpenter, she gave her wardrobe and jewelry, to be divided as her niece, Rachael Ann Carpenter, and her daughter, Josephine Calvert, should direct; to Josephine Calvert, $300; to her grandson, Harry Calvert, $300; to her granddaughter, Elizabeth Gender, $300; to her nephew, James Walter, $300; to her half-sister, Sarah Granger, $100; to Jemima Carpenter, $300; to Lizzie C. Hall, $300; to Sallie C. Worth, $300; to Edward G. Carpenter, $300, and to Frank G. Carpenter, $300. The residue of her estate is given to Miss Sarah Ann Carpenter. The only lineal descendants of Mrs. Naudain are Mrs. Josephine Calvert and her children, Harry W. Calvert, Lizzie G. Gender and Willie B. Calvert.

Mr. CHARLES DUNHAM, Mr. E. C. MODERWELL, and Messrs. LAWRENCE, CAMPBELL & LAWRENCE, for the appellant.

Mr. LEVI NORTH, and Mr. GEORGE W. SHAW, for the appellees.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Two questions are presented by the record before us. First, did the Appellate Court err in reversing the decree of the circuit court? Second, after a verdict and decree in favor of appellant, had the Appellate Court, admitting the decree to be erroneous, power to dismiss the bill and enter a final judgment in that court? Preliminary to passing upon the question whether the Appellate Court erred in reversing the decree of the circuit court, it may be proper to advert to the doctrine of this court with respect to the effect of the verdict of a jury in cases of this character.

Ordinarily in chancery cases, where a feigned issue is directed by the chancellor to be made up and submitted to a jury, with respect to some controverted fact arising in the case, the verdict of the jury upon such issue is not conclusive upon the question submitted, but merely advisory in its character, and the chancellor may, when satisfied that truth and justice require it, render a decree contrary to the verdict.

But this doctrine has no application to contested will cases arising under our statute, like the one before us. The verdict of the jury in cases of this character is to have the same force and effect as is given to a verdict in a case at law, under a like state of facts. And where in such case the verdict is not manifestly against the weight of evidence, the court is bound by it in the same manner and to the same extent as if it were a case at law. This construction of the statute is so well settled that it can no longer be regarded as an open question. *Brownfield* v. *Brownfield,* 43 Ill. 147; *Meeker et al.* v. *Meeker,* 75 id. 260.

The circumstances under which this case is now presented are in many respects materially different from those under which it was presented when before us upon a former occasion. Some of the evidence found in the former record does not appear in the present record at all. On the other hand, several new and important witnesses testified on behalf of appellant on the last trial that were not examined at all in the former trial, and some additional and important testimony has been elicited from witnesses before examined which was not called out on their former examinations.

The evidence as now presented is very voluminous. The witnesses, with respect to numbers, are about equally divided, and some forty-four or forty-five altogether have been examined.

With respect to some of the features of the case there is little or no diversity in the testimony. As to others the evidence is in direct conflict and wholly irreconcilable. The immediate and vital question, indeed the only question submitted to the jury, was: had Mrs. Lydia W. Naudain, at the time of the execution of the instrument in question, on the 6th day of January, 1873, sufficient mental capacity to make a will? To this single question the entire evidence was directed.

In view of the great number of witnesses that have been examined on either side of this case, and the conflicting character of their testimony, it would be an almost endless undertaking to attempt an analysis of it; and, as we are satisfied that no good would result from it, we shall forbear discussion of it. Suffice it to say that if the opinions of disinterested witnesses who have had the best possible opportunities of judging of the mental condition of one, can in any case establish a want of testamentary capacity, it was certainly done in this case before any rebutting evidence was offered by appellees. Whether this *prima facie* case made by appellant is overcome by the evidence on behalf of appellees, was

in a great measure a question for the jury, who have answered it in the negative.

The case has been twice tried in the county where it arose, before two different juries and two different judges, resulting each time in a verdict and decree against the validity of the instrument as a will. It can hardly be supposed that any local influences could have led to these results, for appellant and her entire family reside on the Pacific coast many miles away.

The general credibility and social standing of the witnesses were doubtless known to the juries who tried the case, and all the conditions seem to have been favorable, so far as we can discover, to a fair trial and a result consonant with law and justice. And this is particularly so with reference to the last trial. For the judge who tried the case had the benefit of the views of this court, as heretofore expressed, when the case was before us on appeal from the circuit court, and it is but reasonable to suppose that in trying it he honestly endeavored to discharge his duty in the light of what we then said.

It can scarcely be repeated too often, that the judge and jury who try a case in the court below have vastly superior advantages for the ascertainment of truth and the detection of falsehood over this court sitting as a court of review. All we can do is to follow with the eye the cold words of the witness as transcribed upon the record, knowing at the same time, from actual experience, that more or less of what the witness actually did say is always lost in the process of transcribing. But the main difficulty does not lie here. There is an inherent impossibility of determining with any degree of accuracy what credit is justly due to a witness from merely reading the words spoken by him, even if there were no doubt as to the identity of the words. However artful a corrupt witness may be, there is generally, under the pressure of a skillful cross-examination, something in his manner or bearing on the stand that betrays him, and thereby destroys the force of his testimony. Many of the real tests of truth by

which the artful witness is exposed, in the very nature of things can not be transcribed upon the record, and hence they can never be considered by this court. For this reason the rule is firmly established, that where, as in this case, there is an irreconcilable conflict in the testimony, this court will not reverse the judgment of the trial court, where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the verdict. And this rule is especially applicable where, as in this case, the evidence is very voluminous, and there have been two trials resulting in the same way.

Testing the case by this rule we are of opinion that the Appellate Court erred in reversing the decree of the circuit court. The conclusion reached renders it unnecessary to consider the other question.

The judgment of the Appellate Court is reversed, and the cause remanded with directions to enter a judgment in that court affirming the decree of the circuit court.

*Judgment reversed.*