Stefan Turon, Appellee, v. Chicago City Railway Company, Appellant.

Gen. No. 14,816.

1. VERDICT—*when set aside as against the evidence.* Although the evidence is conflicting, and the evidence of the successful party, standing alone and considered by itself, is sufficient to sustain the judgment, it is nevertheless the duty of the Appellate Court to reverse the judgment if it is clearly against the weight and preponderance of the evidence.

2. TRIAL—*when exhibition of injury to jury subject to criticism.* Where the injury was not disputed it is doubtful if the injured member should be allowed to be exhibited to the jury.

3. EVIDENCE—*when improper cross-examination will not reverse.* Notwithstanding a cross-examination proceeded too far, it will not reverse where the baneful effect, if any, was removed by the remarks of the trial judge to the effect that the matters elicited were immaterial.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed January 18, 1910. Rehearing denied February 1, 1910.

GEORGE W. MILLER, for appellant; JOHN R. HARRINGTON, of counsel.

JOHNSON, BELASCO & McCABE, for appellee; JOEL BAKER, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

Appellee, Stefan Turon, recovered a judgment in the Superior Court against the appellant, Chicago City Railway Company, for $5,000 for personal injuries received by him October 7, 1905.

The declaration filed contained two counts. The defendant pleaded to the first count and filed a general and special demurrer to the second count. The demurrer was sustained by the court, and the case went to trial on the first count.

The first count of the declaration averred that the defendant owned and operated certain street car tracks on Ashland avenue, in Chicago, for the purpose of carrying passengers for hire, on which the cars were propelled by electricity and operated by the servants of the defendant; that on the date named the plaintiff was a passenger on a certain car of the defendant which was driven along Ashland avenue in a northerly direction; that plaintiff desired to alight at Thirty-seventh street, and the defendant stopped the car for the purpose of permitting the plaintiff to alight, and while the plaintiff was attempting to alight from the car, with all due care and caution for his safety, the defendant carelessly, wrongfully and negligently started the car suddenly and with a violent jerk, and thereby greatly and permanently injured the plaintiff.

The testimony of the plaintiff and one other witness tends to support the theory of the accident set out in the declaration. The contention of the defendant is that the plaintiff attempted to alight from the car while it was in motion. This is the controversy of fact in the case. In support of the theory that the car had not stopped and was running at a speed of five or six miles an hour, at the time plaintiff stepped off the front platform where he was riding, the defendant introduced the testimony of seven witnesses.

It is urged with great earnestness on the part of ap-

pellant that the verdict and judgment are contrary to the weight of the evidence, and that we should reverse the judgment for that reason.  Although the evidence is conflicting, and the evidence of the successful party, standing alone and considered by itself, is sufficient to sustain the judgment, it is nevertheless our duty to reverse the judgment if it is clearly against the weight and preponderance of the evidence.  Donelson v. East St. Louis Ry. Co., 235 Ill. 625.  In that case the court uses the following language: "If a verdict is manifestly against the weight of the evidence, it is not necessary that it should further appear that it was not the result of the impartial and honest judgment of the jury, nor that it resulted from prejudice, passion or some improper motive or condition.  To permit a verdict which is clearly and manifestly against the weight of the evidence to stand, upon the supposition that the jury were impartial and honest, would be as unjust and injurious to the defeated party as though it proceeded from passion, prejudice or some improper motive."  This duty, however, does not require us to usurp the province of the jury and set aside their verdict on the ground merely that had we been sitting as jurors, we might or would have found differently.  Guided by these rules as to our powers and duty, we have carefully considered the evidence in the case, not only as to the substantive facts sworn to by the witnesses but all the incidental facts appearing in the record which tend to throw light upon the credibility of the witnesses, and afford us a basis for determining the weight of the testimony of each witness.  The plaintiff's case rests entirely upon his own testimony, and that of Bilak, which corroborates Turon's testimony fully.  An effort is made in argument to cast some doubt upon the fact that Bilak was on the car at the time of the accident.  But we think the basis for that idea is too shadowy to be recognized as having any substance.  The evidence shows that Bilak was on the

platform of the car with the plaintiff and was standing beside the plaintiff at the time he started to alight from the car, and had the best opportunity to observe what happened at the time.

It is urged that as against this evidence is the testimony of seven witnesses called by the defendant, six of whom were on the car at the time, and that this testimony absolutely precludes a recovery by appellee.

As to the testimony of Skindzier, we think it may be disposed of by the remark that he was sent out to the hospital by appellant to obtain an admission from Turon as to the manner of the accident, and testify to it at the trial. The jury were justified in giving it little weight.

The witness Link did not see the accident. He was the conductor of the car and was engaged in the car collecting fares at the time.

The motorman, Fogarty, testified that the car did not stop at Thirty-ninth street until after the accident; that he felt some commotion on the car behind him and looked around and saw a man falling. He did not notice the man so as to recognize him and did not get a bell or signal to stop the car when he made the stop. In this last statement he is contradicted by Mrs. Coleman.

The witness Coleman had been in the employ of the defendant from September 11, 1907, to the time of the trial. He testified that he was on the car at the time of the accident, sitting on the east side of it near the front end. He saw a man standing on the east side of the front platform and "all of a sudden I seen him drop off the car," while it was moving. Coleman's wife was with him on the car and they were conversing at the time of the accident. She testifies that the conductor went through the car to collect fares on the front end, and "as he came there he pulled the bell rather sharply and the car stopped, and at the time I felt the car went over something." On cross-examina-

tion she said: "I called his (husband's) attention to the fact that the car was going over something, then he got up and went out. Before that time he had not remarked anything to me. * * * We were sitting on the east side (of the car); he was facing southwest at the time, talking to me." The testimony of this witness impairs the force of Coleman's testimony.

Another witness, Duerwerth, testified that he was riding on the front platform at the time of the accident, and when the car was about twenty feet past Thirty-ninth street, "there was a motion—I never saw the man—with a rushing kind of crowding on the front platform of the car, and there was somebody leaped off." The car was in motion at the time. The substance and character of the witness' testimony do not entitle it to much weight.

The witness Ward testified that he was a motorman for the defendant at the time of the trial, and was working for the defendant in October, 1905; that at the time of the accident he was on the front platform. "I heard something kind of crash and I looked around and saw a man going to the ground; the car was going at half speed; I didn't hear any bells rung to stop or anything else." What it was that produced the "crash" does not appear. The witness' testimony is in conflict with Mrs. Coleman's and Bilak's testimony as to the ringing of the bell, and considering the general character of his testimony, it is not entitled to much weight, in our opinion.

This testimony, taken all together, does not produce upon our minds the conviction or conclusion that the verdict of the jury is manifestly and clearly against the weight of the evidence. Whether we might or would have found differently from the jury, if we had been sitting as jurors in the case, is not material to state. The evidence is conflicting, and some consideration must be given to the superior opportunities of the trial judge and the jury over this court sitting as a

court of review, for determining the credibility of the witnesses, where there is a direct conflict as to material facts. Calvert v. Carpenter, 96 Ill. 63. We are unable to say that the verdict is so palpably against the weight of the evidence that the judgment must be reversed.

It is urged that the court erred in allowing the exhibition of the injured foot to the jury. It is conceded that it is ordinarily within the reasonable discretion of the court, but it is contended that in this case where the injury was not disputed, there was such a clear abuse of the discretion as warrants a reversal on that ground. We think it is questionable whether the exhibition was proper under the circumstances. But, we are not prepared to say that it was a clear abuse of the discretion possessed by the trial court, or that it worked any harm to appellant.

We think the court allowed the cross-examination of the witness Ward to be carried too far. Upon the direct examination of the witness no questions were asked as to where he went or what he did that night after the accident. Further, it was entirely immaterial matter, as the court remarked. There was no good reason or excuse for counsel's persistence in making such a cross-examination, especially after the court stated that he could not see its materiality. We do not think, however, in view of the remarks of the court in the presence of the jury, that the admission of the evidence had any material effect upon the jury tending to impair the credibility of the witness.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*