## AETNA LIFE INS. CO. v. PRICE et al.

No. 22097. Opinion Filed Sept. 15, 1931.

Rehearing Denied Oct. 13, 1931.

Clayton B. Pierce, for petitioner.

Johnson & Jones and West Gibson, Sherman, Davidson & Hull, for respondents.

KORNEGAY, J. This is an original proceeding to review the action of the Industrial Commission with reference to making an award in this matter in favor of Dewey Price and against the petitioner, Aetna Life Insurance Company. The controversy arises over the determination of liability, not over the question of the extent of injury. The evidence in the case is conclusive that Dewey Price, the injured workman, is entitled to full compensation, the controversy here is as to who is to pay it.

The gist of the complaint of the Aetna Life Insurance Company is that it is not liable because the employer that it was insurance carrier for was not the employer of Price, claimant, at the time of the injury. Insistence is made also upon the proposition that the order of October 4, 1930, that is set out in the record, holding that the Aetna Life Insurance Company was not liable, should not have been rescinded by the Commission, which it did on notice, and a finding should not have been made by the Commission that it was liable, as is shown by the record in this case to have been made on the 15th day of January, 1931. The last order complained of is as follows:

"Now, on this 15th day of January, 1931, the State Industrial Commission being regularly in session, this cause comes on for consideration on the claim of Dewey Price, claimant, for compensation for disability resulting from an accidental injury which he alleges was sustained by him on the 17th day of September, 1929, and the Commission having considered the testimony taken at hearings had in the above-entitled cause at Bristow, Okla., February 27, 1930, at Oklahoma City, Okla., on March 12, April 18, and September 2, 1930, before Commissioner F. L. Roblin to determine liability and extent of disability, at which hearings claimant appeared in person and by his attorneys, Laux & Robinson, the respondent, Pure Oil Company and the United States Fidelity & Guaranty Company being represented by W. G. Hawkinson, the respondent L. E. Alleman, as the Shrine Drilling Company being represented by Johnson & Jones, the Aetna Life Insurance Company being represented by C. B. Pierce, and the Commission having examined all the records on file in this cause, and after reviewing the testimony taken at the various hearings, and after hearing arguments of counsel at Oklahoma City, November 3, 1930, and being otherwise well and sufficiently advised in the premises, finds the following facts:

"1. That, on the 17th day of September, 1929, claimant, Dewey Price, was in the employment of the respondent, L. E. Alleman, and engaged in a hazardous employment covered by and subject to the provisions of the Workmen's Compensation Act; that said work was the drilling of an oil and gas well for the respondent L. E. Alleman, operating as the Shrine Drilling Company, for the respondent, the Pure Oil Company.

"2. That the insurance carrier, or said respondent, the Pure Oil Company, had prior to said date issued a standard Workmen's Compensation insurance policy, covering any liability of said respondent, under the Workmen's Compensation Law, and that the Aetna Life Insurance Company was the insurance carrier of the respondent, L. E. Alleman, operating as the Shrine Drilling Company; that the insurance carrier of the said respondent, L. E. Alleman, operating as the Shrine Drilling Company, deny that said claimant, Dewey Price, was an employee of the said respondent, L. E. Alleman, operating as the Shrine Drilling Company on the 17th day of September, 1929, or on any other date.

"3. That, in the course of and arising out of his employment, said claimant, on the 17th day of September, 1929, sustained an accidental personal injury, as a result of which said claimant is permanently and totally disabled from the performance of ordinary manual labor.

"4. That the average wage of the claimant at the time of said accidental personal injury was $11 per day.

"5. That the claimant was not at the time of said accidental injury in the employment of the respondent, H. A. Dilley.

"The Commission is of the opinion by rea-

son of the aforesaid facts: That respondent, L. E. Alleman, operating as the Shrine Drilling Company, is primarily liable, and that the Aetna Life Insurance Company, said respondent's insurance carrier, is secondarily liable for compensation to claimant at the rate of $18 per week, beginning September 22, 1929, and continuing for a period of 500 weeks.

"The Commission is further of the opinion: That the Pure Oil Company and its insurance carrier, the United States Fidelity & Guaranty Company, should be relieved of liability in this cause.

"It is, therefore, considered and ordered: That within 15 days from this date, the respondent, L. E. Alleman, operating as the Shrine Drilling Company, or his insurance carrier, the Aetna Life Insurance Company, pay to the claimant, Dewey Price, the sum of $1,233, the same being 68 weeks and three days waiting period, computed at the rate of $18 per week, from the 22nd day of September, 1929, to January 15, 1931, and to pay compensation from this date at the rate of $18 per week, until the aggregate of 500 weeks have been paid, and also pay all medical expenses incurred by claimant by reason of said aforementioned accidental injury.

"It is further ordered: That a credit on this award be given in the sum of $600, heretofore paid said claimant under the stipulation entered into by and between all parties herein, to be deducted from the accumulated compensation now due the claimant.

"It is further ordered: That the Pure Oil Company and its insurance carrier, United States Fidelity and Guaranty Company, be and the same are hereby relieved of liability in said cause.

"It is further ordered: That within 30 days from this date, the respondent, L. E. Alleman, operating as the Shrine Drilling Company, or its insurance carrier, the Aetna Life Insurance Company, file with the Commission proper receipts or other reports evidencing compliance with the terms of this order."

The power to make rules is vested in the Industrial Commission by statute. They made an effort to comply with their rules, and the showing made for a setting aside of the original order and putting in another appears to have been satisfactory to the Commission. The statute specially applicable, as we think, here, is found in the act of the Legislature of 1923, Session Laws of 1923, chapter 61, at page 128, as amended, reading as follows:

"Jurisdiction.

"Section 13. Section 7325, Compiled Oklahoma Statutes 1921, is hereby amended to read as follows:

"'Section 7325. The power and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders relating thereto, if, in its opinion it may be justified, including the right to require physical examinations as provided for in section 7293, and subject to the same penalties for refusal; provided, that upon petition filed by the employer or insurance carrier, and the injured employee, the Commission shall acquire jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition. The Commission is authorized and empowered to have a full hearing on the petition, and to take testimony of physicians and others relating to the permanency or probable permanency of the injury, and to take such other testimony relevant to the subject-matter of such petition as the Commission may require. The Commission shall have authority to consider such petition and to dismiss the same without a hearing if, in its judgment, the same should not be set for hearing; the expenses of such hearing or investigation, including necessary medical examinations, shall be paid by the employer or insurance carrier, and such expenses may be included in the final award. If the Commission decides it is for the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly, and the Commission may make an award that shall be final as to the rights of all parties to said petition, and thereafter the Commission shall not have jurisdiction over any claim for the same injury or any results arising from same. If the Commission shall decide the case should not be finally settled at the time of the hearing, the petition shall be dismissed without prejudice to either party, and the Commission shall have the same jurisdiction over the matter as if said petition had not been filed. The same rights of appeal shall exist from the decision rendered under such petition as is provided for appeals in other cases before the Commission; provided, there shall be no appeal allowed from an order of the Commission dismissing such petition as provided in this Section."

We have examined this entire record, and to say that the order of the 15th of January, 1931, fixing the responsibility in this case, is not sustained by sufficient competent evidence would be to ignore the evidence in this case. The great weight of evidence in this case is that the injured workman, Dewey Price, was in the employ of L. E. Alleman, doing business as the Shrine Drilling Company, at the time of the injury. There was some evidence that at one time, when the well was started, a man by the name of Dilley was interested. Other persons were also interested. The people for whom the well was being drilled were interested. The supply company, which was furnishing tools

and other things and desiring the contract to be filled so that it would have money paid it, was also interested.

Dilley, the man in charge of the wells, ceased to have anything to do with the operation sometime in July before the accident in September. This is testified to by Alleman, and Dilley, by Price, and by everybody concerned in getting the well down, and there is nothing to show that Dilley was interested in the actual performance of the work at the time of the injury, or that Price was in his employ, except some things, which were explained by the testimony, which might give rise to an inference to the contrary.

We are, therefore, not at liberty to disturb this finding, and the award of the Industrial Commission is accordingly affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER and McNEILL, JJ., concur. SWINDALL and ANDREWS, JJ., dissent. CULLISON, J., not participating. RILEY, J., absent.

———————

ANDREWS, J. (dissenting). An issue presented by the record and in the briefs in this case is not considered in the opinion of my associates. For that reason I am forced to dissent.

The record in this case shows the evidence was taken by Mrs. Roblin, one of the members of the State Industrial Commission, and that an award based upon the findings of fact made by her and concurred in by the three members of the State Industrial Commission was made under date of October 4, 1930. Thereafter the two members of the State Industrial Commission, who had not heard the evidence and whose knowledge thereof was confined to that obtained from the reading of the typewritten transcript thereof, changed their minds and, over the protest of Mrs. Roblin and without having heard any of the testimony and without hearing any evidence after granting a new hearing, they vacated the award of October 4, 1930, and made an award under date of January 15, 1931. That award was not concurred in by Mrs. Roblin, and neither of the Commissioners who concurred in it saw any of the witnesses or heard any of the testimony. It was based solely upon the information that they received from the reading of the typewritten transcript of the evidence taken before Mrs. Roblin.

The petitioner herein contends that the two members of the State Industrial Commission who concurred in the last award, which is the award before this court for review, had no greater knowledge of the facts in this case than is available to the members of this court from a reading of the typewritten record in this case, and that neither of them had an opportunity to observe the witnesses and their conduct or to consider the evidence in the light of the knowledge gained from an observation of the conduct and demeanor of the witnesses upon the witness stand. That contention is evidently correct, unless this court is willing to concede that two members of the State Industrial Commission are better able to determine facts by reading a typewritten transcript of evidence than are the members of this court. Personally, I think that the members of this court can ascertain the facts from reading a typewritten record as well as the members of the State Industrial Commission. I think that the rule that an award of the State Industrial Commission will not be disturbed by this court, if there is any competent testimony in the record to support the same, is based on the fact that the members of the State Industrial Commission, like the members of a jury, have an opportunity to see the witnesses and observe their conduct and demeanor upon the witness stand. But, in this case, no member of the State Industrial Commission who concurred in the award saw any of the witnesses or heard any of the evidence.

The evidence in this case is conflicting. There is some verbal testimony that will support the award, but the written evidence in this case is to the contrary. There is thus presented the question of whether or not the witnesses were testifying truthfully. Under all the rules of which I have any knowledge, under such state of facts, the conduct and demeanor of the witnesses upon the witness stand must be the determining factor. Such is the rule in a trial before a jury where only $25 is involved. Certainly there was no intent on the part of the Legislature that such a rule could not be applied in a matter involving more than $5,000.

The issue in this case is whether the claimant, Dewey Price, was in the employ of Alleman & Dilley at the time of the injury, or whether he was in the employ of L. E. Alleman, operating as the Shrine Drilling Company. If he was in the employ of L. E. Alleman, operating as the Shrine Drilling Company, the Aetna Life Insurance Company is liable as the insurance carrier of L. E. Alleman. If he was in the employ of Alleman & Dilley, then Alleman & Dilley are liable, for that copartnership did not have compensation insurance at the time of the accident. The Pure Oil Company, the employer in the case, recognized this condition and withheld some $10,000 of the amount

due from it to Alleman & Dilley under its contract with Alleman & Dilley, under the authority of the statute, for the purpose of protecting itself against any liability by reason of the inability of Alleman & Dilley to satisfy an award against them. It is evident that both Alleman and Dilley were interested in establishing the fact that the claimant was not in their employ, but in the employ of L. E. Alleman, for, if that fact was established, Alleman & Dilley would not be liable and the Aetna Life Insurance Company would be liable.

The record shows that Alleman & Dilley was a copartnership and that it entered into a contract with the Pure Oil Company to drill the oil well in the operation of which the claimant was injured. Alleman claims that the partnership was dissolved on July 27, 1929; that he took over the well at that time and completed the drilling of it under the name of the Shrine Drilling Company, and that the claimant was an employee of the Shrine Drilling Company. Under date of September 19, 1929, L. E. Alleman executed an employer's first notice of injury. The title was, "Dewey H. Price v. Alleman & Dilley, Drilling Contractors." It shows the name of the employer as Alleman & Dilley and it was executed "Alleman & Dilley, by L. E. Alleman." That report was received by the Aetna Life Insurance Company at its Tulsa office on September 24, 1929. Alleman admitted the execution thereof when it was presented to him for identification during the hearing. Thereafter he denied the execution thereof. He said that he was not in the state on the 19th day of September, 1929; that the signature looked like his; that he did not sign it because he was not in the state at that time; that he did not know until about eight o'clock in the evening on September 19th of the injury to the claimant, and that at that time he was 350 miles away. He was then confronted with checks which he admitted that he signed. Whereupon he admitted that he had executed the instrument. Dr. A. H. Silverman executed an attending physician's report, upon which L. E. Alleman wrote the following, "L. E. Alleman O. K." That report was entitled "Dewey H. Price v. Alleman & Dilley."

J. D. Ford, an employee of the Aetna Life Insurance Company, testified as to a conversation with L. E. Alleman over the telephone on September 18, 1929, and said that Mr. Alleman told him at that time that Alleman & Dilley had had a serious accident occur to one of their employees. Alleman denied that conversation, and said that he was not in the state at that time. The records of the Bell Telephone Company were offered, showing that at 10:12 a. m. on September 18, 1929, Alleman called Pierce, Porter & Martin, who were the agents of the Aetna Life Insurance Company, at Tulsa. Alleman changed his former testimony and admitted that he was in Bristow on the 18th day of September, 1929. He stated that the telephone call advising him of the injury to the claimant was received at ten o'clock on the night of the 17th day of September and that he immediately left for Holdenville. Daily reports were made to the Pure Oil Company in the name of Alleman & Dilley. The amount due from the Pure Oil Company for drilling a well was about $45,000. The Pure Oil Company withheld $10,000 for the purpose of protecting itself against liability on this claim. Thirteen thousand dollars was paid to Alleman & Dilley in June, 1929. A check for about $8,000 was executed to Alleman & Dilley on February 10, 1930. On February 10, 1930, an assignment from Alleman & Dilley to the Oil Well Supply Company of $14,000 was made, completing the $45,000 due. The assignment referred to was as follows:

"Tulsa, Oklahoma.
"February 10th, 1930.
"Pure Oil Company,
"Tulsa, Okla.

"This will be your authority to pay to the Oil Well Supply Company the sum of $14,-000 from proceeds of the Johnson Well No. 1, in Hughes county, Okla., charging same against the Alleman and Dilley account.

"Alleman & Dilley
"By L. E. Alleman."

I do not consider it necessary to comment on the evidence further. I think that the written evidence shown by this record is in conflict with the testimony of Alleman that this partnership was dissolved in July, 1929. I think that an award could not be made in this case by two Commissioners, neither of whom heard the evidence, saw the witnesses, or observed their conduct and demeanor upon the witness stand, when the only Commissioner who heard the evidence, saw the witnesses, and observed their conduct and demeanor upon the witness stand refused to concur therein. My reason for so thinking is that the petitioner in this case should not be deprived of that evidence long recognized, which is material and which is described by the Supreme Court of Missouri in the case of Creamer v. Bivert, 113 S. W. 1118, in the following language:

"We well know that there are things of pith that cannot be preserved in or shown by the written page of a bill of exceptions. Truth does not always stalk boldly forth naked, but modest withal, in a printed ab-

stract in a court of last resort. She oft hides in nooks and crannies visible only to the mind's eye of the judge who tries the case. To him appears the furtive glance, the blush of conscious shame, the hesitation, the sincere or flippant or sneering tone, the heat, the calmness, the yawn, the sigh, the candor or lack of it, the scant or full realization of the solemnity of an oath, the carriage and mien. The brazen face of the liar, the glibness of the schooled witness in reciting a lesson, or the itching over eagerness of the swift witness as well as the honest face of the truthful one, are alone seen by him. In short, one witness may give testimony that reads in print, here, as if falling from the lips of an angel of light, and yet not a soul who heard it, nisi, believed a word of it; and another witness may testify so that it reads brokenly and obscurely in print, and yet there was that about the witness that carried conviction of truth to every soul who heard him testify."

The same thought was expressed in United States v. Lee Huen, 118 Fed. 442, as follows:

"It is true that an intelligent and experienced judge often detects the falsehood of a witness who tells a story, which, reduced to writing, reads smooth as the Psalms of David."

And in Calvert v. Carpenter, 96 Ill. 63, wherein it was said:

"It can scarcely be repeated too often that the judge and jury who try a case in the court below have vastly superior advantages for the ascertainment of truth and the detection of falsehood over this court, sitting as a court of review. All we can do is to follow with the eye the cold words of the witness as transcribed upon the record, knowing at the same time, from actual experience, that more or less of what the witness actually did say is always lost in the process of transcribing. But the main difficulty does not lie here. There is an inherent impossibility of determining with any degree of accuracy what credit is justly due to a witness from merely reading the words spoken by him. * * * However artful a corrupt witness may be, there is generally, under the pressure of a skillful cross-examination, something in his manner or bearing on the stand that betrays him. and thereby des'roys the force of his testimony."

In my judgment the award concurred in by Mrs. Roblin should not have been vacated and set aside, and that, if it was, a new hearing should have been had prior to the making of the second award, that the other Commissioners might have an opportunity to hear the evidence, see the witnesses, and observe their conduct and demeanor upon the witness stand. Such is the rule in civil actions. When a trial court hears the evidence, renders a judgment, and thereafter grants a new trial, judgment can-

not be rendered on the evidence theretofore taken, but a new trial must in fact be had, and the second judgment must be rendered upon the evidence taken at the second trial. Curtis v. Bank of Dover, 113 Okla. 224, 241 P. 173.

For the reasons expressed herein, I dissent.